LEBOWITZ LAW OFFICE LLC
275 Madison Avenue
New York, NY 10016
Tel (212) 682-6818
Marc A. Lebowitz (ML 7381)

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------- X
                                              :

ANDERSON REAL ESTATE SERVICES, INC.,    :   Civil Action

                  Plaintiff,       :

                                                :   COMPLAINT

       -against-              :

                                                  :   Plaintiffs Demands
NATIONAL TENANT NETWORKS, INC.,         :   A Trial By Jury

                  Defendant.      :

                                                  :
-------------------------------------------- X



      Plaintiff Anderson Real Estate Services, Inc. ("Anderson" or
"Plaintiff"), by and through its attorneys Lebowitz Law Office LLC, as
and for its complaint against defendant, National Tenant Networks,
Inc. ("NTN" or "Defendant"), alleges as follows:

<u>PARTIES, JURISDICTION, AND VENUE</u>

      1.   Plaintiff Anderson is Corporation organized under the
laws of the State of New and having a principal office in Greenwich,
Connecticut.

      2.   Defendant NTN is a corporation organized under the
laws of the State of Oregon, and having a principal office address at
525 SW First, Lake Oswego, Oregon 97034.

      3.   This Court has subject matter jurisdiction over this action
pursuant to 28 U.S.C. 1332 based on diversity of citizenship.  The

amount in controversy, exclusive of interest and costs, is in excess
of $75,000.

4.    Venue is proper in the Southern District of New York
pursuant to 28 U.S.C § 1391 as it is the district in which, *inter alia*,
the injury complained of is being inflicted.

FACTUAL BACKGROUND

5.    NTN is a national franchise system which offers unique
residential tenant screening services to landlords, property managers
and leasing agents via NTN's network of local franchisees.

6.    On or about April 1, 1999, Anderson and NTN entered into an
exclusive franchise agreement. (the "Franchise Agreement").

7.    Pursuant to § 1(A) of the Franchise Agreement, Anderson was
granted the exclusive right to operate an NTN franchise (the
"Franchise") in the territory of the counties of "New York, Bronx,
Queens, Kings and Staten Island in the State of New York" ("Anderson's
Territory").  Subsequently, the counties of Westchester (New York) and
Fairfield (Connecticut) were added to the Territory by mutual
agreement.

8.    Pursuant to § XII(A) of the Franchise Agreement, the term
of the Franchise was for ten (10) years (the "Term") with Anderson
having a right to extend the Term for another ten (10) years, as set
forth in § XII(B) of the Franchise Agreement as follows:

> In the event [Anderson] chooses to renew as
> provided herein, [Anderson] shall send to [NTN]
> its written consent to renew at least ninety (90)
> days before the expiration of the initial term
> granted herein.  In order to avoid any forfeiture
> or inadvertent lapse of [Anderson's] right to

renew [the Franchise]...[Anderson's] right to
renew its franchise shall nevertheless continue,
as shall its franchise (under the same terms and
conditions as theretofore in effect and
notwithstanding that the initial term or the then
current term shall have expired), until ten (10)
business days after [NTN] shall have given
[Anderson] a written notice of [NTN's] election
to terminate [Anderson's] right to renew its
franchise during which period [Anderson] may
exercise its renewal option at any time prior to
the expiration of such ten (10) business day
period.

9.   Pursuant to § I(B) of the Franchise Agreement, NTN
explicitly agreed that it would not "enfranchise or operate any other
NTN business or any similar or competitive business in [Anderson's
Territory]"

10.   Although the exclusivity of the Anderson Territories is
material part of the Franchise Agreement, Anderson had, for many
years, been complaining to NTN that other franchisees, including one
from New Jersey, were routinely and consistently encroaching on
Anderson's Territory and impermissibly servicing customers located
within Anderson's Territory.

11.   Despite numerous complaints to NTN about such encroachment,
and NTN's corresponding promises to investigate and eliminate said
encroachment, NTN did not stop this violation of Anderson's Territory
and allowed it to continue.

12.   NTN also failed to provide many of the support services it
was required to provide pursuant to the franchise Agreement, despite
Anderson's numerous requests that such services be provided.

13.    NTN also overcharged and incorrectly billed Anderson for services for years, thus NTN's purported amounts due from Anderson are inaccurate.

14.    On August 18, 2010 NTN sent a letter to Anderson pursuant § XII (B) of the Franchise Agreement noting its "election" to terminate Anderson's renewal right. (the "August 18 Notice")

15.    Pursuant to § XII (B) of the Franchise Agreement the August 18 Notice triggered a ten (10) period for Anderson to exercise its right to renew.  The purpose of § XII (B) being explicitly to "avoid any forfeiture ... of Franchisee's right to renew..."

16.    On or about On August 27, 2010, Anderson timely exercised its right to extend the Term of the Franchise for an additional ten (10) year period.

17.    By letter dated September 1, 2010, NTN acknowledged receipt of Anderson's renewal notice, but took the position that Anderson was in default of payment obligations to NTN, and provided Anderson with fifteen (15) days notice to make payments to NTN of the amounts it deemed owed – amounts not agreed to by Anderson.

18.    During this back and forth between NTN and Anderson, NTN's principal agreed to extend the term of the Franchise Agreement for six (6) months while the parties tried to work out their issues.

19.    This six (6) month stand-still is consistent with the contractual obligation that the parties to the Franchise Agreement mediate any disputes.  The mandatory mediation provision is set forth at § XXIX(A) of the Franchise Agreement:

> except as specifically provided otherwise in this
> Agreement, the parties agree that any disputes
> between them, and any claim by either party that
> cannot be amicably settled, shall first be subject
> to standard business mediation practices.

(the "Mandatory Mediation Provision").

20.   Despite the Mandatory Mediation Provision, by email dated
September 30, 2010, NTN purported to again reject the extension and
deem the Franchise Agreement terminated based on a default by
Anderson.

21.   However, § XIV (B) of the Franchise Agreement allows for
termination as a result of default only if "such default shall not be
cured within thirty (30) days of receipt of a written and detailed
'Notice to Cure' thereof from [NTN]." (the "Notice to Cure").

22.   NTN did not, and has not to date, sent a conforming written
and detailed "Notice to Cure." Rather, NTN has simply arrogated to
itself the right to deem Anderson in default and extinguish Anderson's
rights.

23.   Pursuant to the Mandatory Mediation Provision NTN is
required to mediate the disputes among the parties, including the
issue of whether Anderson is in default, whether NTN is in default,
and whether the renewal notice is effective.

24.   On October 1, 2010, NTN sent an email to all of Anderson's
customers, which read as follows:

> As of September 30, 2010, Anderson Real Estate
> Services, Inc. is no longer a National Tenant
> Network franchisee. As an NTN subscriber, this
> will have limited, if any, impact on you. To the
> extent you conduct applicant screening at
> NTNonline.com, there will be no change. To the
> extent you prefer to request reports by

> telephone, you may make those requests by calling
> 800-228-0989 and a national NTN representative
> will assist you. To fax your screening request,
> please use 1-800-340-1116. Whatever method you
> choose, we will continue to respond to your
> screening needs with the same level of promptness
> and care that we have in the past.
> If you have any questions about this transition,
> please do not hesitate to contact Don at 800-228-
> 0989.

(the "October 1 Email")

25.    Thus on October 1, 2010 NTN put a bullet in the head of
Anderson's business.  Despite i) having ignored the written and
detailed Notice to Cure provision, ii) having ignored the Mandatory
Mediation Provision, and iii) having agreed to a 6 month extension to
address the disputes among the parties, NTN sent the October 1 Email
to all of NTN's clients and shut NTN out of its system and stopped
providing services pursuant to the Franchise Agreement.

26.    As a result of NTN's bad faith and lies, Anderson was
unable to move for emergency injunctive relief prior to the October 1
destruction of its business.

<u>FIRST CLAIM FOR RELIEF</u>
(Breach of the Franchise Agreement)

27.    Anderson incorporates herein by reference each and every
prior allegation.

28.    As set forth below, NTN has breached material terms of the
Franchise Agreement by, <u>inter alia</u>, i) failing to comply with the
Notice to Cure provision, ii) failing to comply with the Mandatory
Mediation Provision, iii) allowing another NTN franchise to encroach

on Anderson's Territory, iv) failing to provides services and support,
v) overcharging Anderson, and vi) sending the October 1 Email.

29.    By reason of the foregoing, NTN has materially breached the
Franchise Agreement.

30.    Anderson has satisfactorily performed all of its
obligations to NTN under the Franchise Agreement.

31.    As a direct and proximate result of NTN's multiple breaches
of the Franchise Agreement, Anderson has been damaged in an amount to
be determined at trial, but in no event less than $800,000.00.

<u>SECOND CLAIM FOR RELIEF</u>
(Breach of Implied Covenant of Good Faith and Fair Dealing)

32.    Anderson incorporates herein by reference each and every
prior allegation.

33.    By virtue of the provisions of the Franchise Agreement, NTN
owed Anderson a duty of good faith and fair dealing in the performance
of its contractual obligations to Plaintiff.

34.    NTN violated its duties of good faith and fair dealing by,
among other things, failing to act reasonably with respect to
Anderson's exercise of its right to renew the Term, deliberately
engaging in a pattern of acts designed to deprive Anderson of the
value of its franchise and the ability to protect its rights,
purporting to terminate the Franchise Agreement, sending the October 1
Email to Anderson's clients, and by ceasing to provide Anderson with
services.

35.   As a direct and proximate cause of NTN's conduct, Anderson has suffered and will incur monetary damages in an amount yet to be determined, but in no event less than $800,000.00.

### THIRD CLAIM FOR RELIEF
(Fraudulent Inducement)

36.   Anderson incorporates herein by reference each and every prior allegation.

37.   NTN represented that it would provide Anderson with a six (6) period to allow the parties to work out a resolution.

38.   Anderson relied on this representation.

39.   Anderson's reliance was reasonable, especially in light of the Mandatory Mediation Provision in the Franchise Agreement the prior extension.

40.   Consequently Anderson did not seek injunctive relief prior to October 1, 2010.

41.   As a direct and proximate cause of NTN's fraudulent conduct Anderson has suffered and will incur monetary damages in an amount yet to be determined, but in no event less than $800,000.00

### FOURTH CLAIM FOR RELIEF
(EQUITABLE ESTOPPEL)

42.   Anderson incorporates herein by reference each and every prior allegation.

43.   NTN promised to provide Anderson with a six (6) month period to allow the parties to work out a resolution.

44.   After NTN and Anderson had agreed to the basic terms of an agreement to extend the Term, on or about September 27, 2010, NTN

forwarded to Anderson an extension agreement (the "Extension Agreement").

45.    While negotiating the details of the Extension Anderson, NTN simply stopped returning phone calls and on September 30, 2010, notified Anderson via E-Mail that "[NTN] cannot agree with [Anderson's] revisions [to the Extension Agreement] sent on 9/28/10 at 11:07 AM and hereby rejects that counter-offer". Less than twenty four (24) hours later NTN sent the October 1 Email to Anderson's clients and ceased providing services to Anderson

46.    As a result of NTN's improper and inequitable conduct, Anderson has suffered and will incur monetary damages in an amount yet to be determined, but in no event less than $800,000.00.

FIFTH CLAIM FOR RELIEF<br>(Tortious Interference with Contractual Relations)

47.    Anderson incorporates herein by reference each and every prior allegation.

48.    Anderson entered into contracts to provide screening services to its customers.

49.    NTN was aware of the existence of these contracts.

50.    By sending the October 1 Email and stating that Anderson's Franchise had been terminated, NTN wrongfully induced Anderson's customers to terminate their contractual relationships with Anderson.

51.    NTN's interference has been intentional and unjustified.

52.    By reason of the foregoing thereof, NTN tortiously interfered with Anderson's contractual relations.

53.    Consequently, Anderson has suffered damages in an amount to be determined at trial, but in no event less than $800,000.00.

<u>SIXTH CLAIM FOR RELIEF</u>
(Punitive Damages)

54.   Anderson incorporates herein by reference each and every prior allegation.

55.   NTN's conduct has been contumacious and malicious.

56.   As a result Anderson is entitled to an award of punitive damages.

WHEREFORE, based on the foregoing allegations and averments, Plaintiff Anderson Real Estate Services, Inc., respectfully prays that this Court enter the following relief:

1.   That it enter judgment in its favor and against National Tenant Network, Inc. on the first claim for relief in an amount to be determined at trial, but in any event not less than $800,000.00;

2.   That it enter judgment in its favor and against National Tenant Network, Inc. on the second claim for relief in an amount to be determined at trial, but in any event not less than $800,000.00;

3.   That it enter judgment in its favor and against National Tenant Network, Inc. on the third claim for relief in an amount to be determined at trial, but in any event not less than $800,000.00;

4.   That it enter judgment in its favor and against National Tenant Network, Inc. on the fourth claim for relief in an amount to be determined at trial, but in any event not less than $800,000.00;

5.   That it enter judgment in its favor and against National Tenant Network, Inc. on the fifth claim for relief in an amount to be determined at trial, but in any event not less than $800,000.00;

6.    That it enter judgment in its favor and against National Tenant Network, Inc. on the sixth claim for relief in an amount to be determined at trial, but in any event not less than $2,000,000.00;

7.    That it enter such other and further relief as it may deem just and appropriate under the circumstances.

Dated:     New York, New York
           October 12, 2010

                        LEBOWITZ LAW OFFICE, LLC


                        By: _____
                            Marc A. Lebowitz
                            Keith M. Getz
                            275 Madison Avenue
                            36th Floor
                            New York, New York 10016
                            (212) 682-7900
                            *Attorneys for Plaintiff Anderson Real Estate Services, Inc.*

11